**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RITA LINTZERIS and ZARON JOSSELL, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | |
| v. | **JURY DEMAND** |
| CITY OF CHICAGO, a Municipal Corporation, CHARLES L. WILLIAMS, Commissioner, Chicago Department of Streets and Sanitation, PATRICIA JACKOWIAK, Director, CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, EDDIE JOHNSON, Superintendent, Chicago Police Department, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs, RITA LINTZERIS, ("Lintzeris") and ZARON JOSSELL ("Jossell") (collectively "Plaintiffs"), by and through their undersigned counsel, McCabe, Miller & Morrissey, LLC, hereby file this Class Action Complaint, individually, and on behalf of all others similarly situated, against Defendants CITY OF CHICAGO, a municipal corporation (the "City"), CHARLES L. WILLIAMS, not individually but as Commissioner of CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION ("Commissioner"), PATRICIA JACKOWIAK, not individually but in her position as Director of the CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS ("DOAH"), and for their Class Action Complaint allege:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated persons who have paid "Administrative Penalties" pursuant to Chicago Municipal Code §2-14-

132 in direct violation of a mandate by the Illinois Legislature based on a bill that was signed into law and became effective on January 1, 2012, amending the Illinois Motor Vehicle Code and prohibiting any County or municipal unit in the State of Illinois from enacting or enforcing a local ordinance and/or regulation, related to the impoundment of vehicles for certain enumerated offenses, that imposes any penalties beyond "a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle." 625 ILCS 5/11-208.7 (West 2012) ("Section 11-208.7").

2.      On information and belief, the City had knowledge of the aforementioned amendment to the Illinois Motor Vehicle Code but failed to amend its impoundment ordinance, Chicago Municipal Code ("MCC") §2-14-132 ("MCC §2-14-132") and related sections including MCC §7-24-225, MCC §7-24-226(a), MCC §9-080-240, MCC § 9-80-220, MCC § 8-8-060(d) and other applicable sections identified in MCC §2-14-132, that the City, through the Department of Streets and Sanitation and DOAH continues to enforce despite the fact that these sections of the MCC are facially invalid because they permit the City to collect an "Administrative Penalty" or multiple "Administrative Penalties" in violation of Section 11-208.7.

3.      The City has been unlawfully violating Section 11-208.7 from January 1, 2012, through the filing date of this Complaint, despite knowledge of the law and will continue to violate Section 11-208.7 absent injunctive relief from this Court.

4.      This is an action for monetary, declaratory, equitable and injunctive relief as a result of the City's illegal and unconstitutional practice of collecting "Administrative Penalties" that will continue absent the intervention of this Court.

2

## **PARTIES**

5.     Plaintiff Lintzeris is a citizen of the State of Illinois and resides in the Northern District of Illinois.

6.     Plaintiff Jossell is a citizen of State of Illinois and resides in the Northern District of Illinois.

7.     Defendant, the City of Chicago is a Municipal Corporation incorporated pursuant to the laws of the State of Illinois and located in the Northern District of Illinois.

8.     Charles L. Williams, not in his individual capacity but as Commissioner of the City of Chicago Department of Streets and Sanitation, runs the department that is responsible for the impoundment and release of vehicles at various City auto pounds located in the Northern District of Illinois.

9.     Patricia Jackowiak, not in her individual capacity, but as Director and Chief Hearing Officer of the City of Chicago Department of Administrative Hearings, enforces or causes those in her department to enforce the City's non-discretionary ordinances and policy that there are only three defenses to an impoundment action brought pursuant to the MCC and, unless a respondent in an impoundment proceeding proves one of the three enumerated defenses applies, the Administrative Law Judges under her control must enter Administrative Findings, Decisions and Judgments that include "Administrative Penalties" in violation of Section 11-208.7 and other federal and state laws, all of which takes place in the Northern District of Illinois.

10.     Eddie Johnson, not in his individual capacity, but as Superintendent of Police of the Chicago Police Department, enforces or causes those in the Chicago Police Department to enforce the City's non-discretionary ordinances and policy through the impoundment of vehicles

subsequent to arrests made pursuant to the MCC and the Illinois Motor Vehicle Code, all of which takes place in the Northern District of Illinois.

## JURISDICTION AND VENUE

11.    This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' seek, amongst other relief, redress for Defendants' violations of 42 U.S.C. § 1983 and the United States Constitution, claims that present federal questions.

12.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.

13.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because the Court has original jurisdiction over Plaintiffs' Claims pursuant to the Class Action Fairness Act and original jurisdiction over Plaintiffs' federal question claims and the state law claims are so related to claims in this action within this Court's original jurisdiction, that they form part of the same case or controversy within the meaning of Article III of the United States Constitution and involve the same parties and class.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside, are located in, or do business in this judicial district and because all Defendants are residents of Illinois.

15.    Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to the claims herein occurred within this District.

## FACTUAL ALLEGATIONS

16.    On January 1, 2012, the Illinois legislature enacted 625 ILCS 5/11-208.7 of the Illinois Motor Vehicle Code which provided for administrative fees and procedures for

impounding vehicles for specified violations. 625 ILCS 5/11-208.7 (West 2012) ("Section 5/11-208.7").

17.     Prior to enactment of Section 208.7, the Illinois Motor Vehicle Code did not include a limitation prohibiting home rule units, such as the City, from adopting local regulations and ordinances inconsistent with the code.

18.     Section 11-208.7 is not identified in 625 ILCS 5/11-208.2, that sets forth the portions of the Section excluded, therefore home rule units, including Defendant Chicago, are prohibited from enforcing any local regulations inconsistent with Section 208.7.

19.     MCC §2-14-132 is Defendant Chicago's local ordinance regarding impoundment of vehicles, and identifies other sections of the MCC, that along with MCC §2-14-132 are, facially invalid, based on the plain language of Section 208.7 and have been facially invalid since the Section 11.208.7 became law on January 1, 2012.

20.     On information and belief, the City of Chicago actively lobbied the Illinois State Legislature to amend Section 208.2 and, as a result, on February 19, 2015, a member of the 99th General Assembly of the Illinois House of Representatives, introduced Illinois House Bill 2656 ("ILHB 2656"), seeking to amend Section 208.2 of the Illinois Motor Vehicle Code to allow home rule units, such as Defendant Chicago, to adopt ordinances inconsistent with the Section 208.7.

21.     After the first reading of ILHB 2656, it was assigned to the Revenue and Finance and Towing Oversight Committees of the Illinois House of Representatives, where it has remained since March of 2015.

22.     Since January 1, 2012, Chicago has collected well over forty-three million dollars ($43,000,000) in "Administrative Penalties" pursuant to MCC §2-14-132 and the sections of the

MCC identified therein, contrary to and in violation of Illinois Motor Vehicle Code Sections 208.2

and 208.7.

**A.** **The Chicago Municipal Code**

23. Chicago Municipal Code §2-14-132, Impoundment, states in part:

(1) Whenever the owner of a vehicle seized and impounded pursuant to Section 3-46-076, 4-68-195, 7-24-225, 7-24-226, 7-28-390, 7-28-440, 8-4-130, 8-8-060, 8-20-015, 9-12-090, 9-80-220, 9-92-035, 9-112-555, 11-4-1115, 11-4-1410, 11-4-1500, or 15-20-270 of this code requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, **the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle.** If the vehicle is also subject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines that there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

(2) Within 10 days after a vehicle is seized and impounded, the department of streets and sanitation or other appropriate department shall notify by certified mail the owner of record (other than a lessee who does not hold title to the vehicle), the person who was found to be in control of the vehicle at the time of the alleged violation, and any lien holder of record, of **the owner's right to request a hearing before the department of administrative hearings to challenge whether a violation of this code for which seizure and impoundment applies has occurred** or, if the impoundment is pursuant to Section 9-92-035, whether the subject vehicle is eligible for impoundment under that section. In the case where an owner of record is a lessee who does not hold title to the vehicle, the notice shall be mailed to such lessee within ten days after the department of streets and sanitation receives a photocopy or other satisfactory evidence of the vehicle lease or rental agreement,

indicating the name, address and driver's license number of the lessee pursuant to subsection (9).

24.     MCC §2-14-132 allows for impoundment pursuant to the following sections of the code:

a.  MCC § 3-46-076, Impoundment of Ground Transportation Vehicles;

b.  MCC § 4-68-195, Unlicensed Ambulance;

c.  MCC § 7-24-225, Unlawful Drugs in Vehicle;

d.  MCC § 7-24-226, Driving While Intoxicated;

e.  MCC § 7-28-390, Dumping on Public Way;

f.  MCC § 7-28-440, Dumping on Real Estate without Permit;

g.  MCC § 8-4-130, Possession of Etching Materials;

h.  MCC § 8-8-060, Solicitation for Prostitution;

i.  MCC § 8-20-015, Unlawful Firearm in Vehicle;

j.  MCC § 9-12-090, Drag Racing;

k.  MCC § 9-80-220, False, Stolen or Altered Temporary Registration Permits;

l.  MCC § 9-92-035, Impoundment of Fleeing Vehicle;

m.  MCC § 9-112-555, Revoked, Surrendered License;

n.  MCC § 11-4-1410, Disposal in Waters Prohibited;

o.  MCC § 11-4-1500, Treatment and Disposal of Soling or Liquid Waste; and

p.  MCC § 15-20-270, Unlawful Fireworks in Motor Vehicle.

**B.  Limitation on Home Rule Units**

25.     Chicago is a home rule unit. The powers of home rule units to govern local affairs originates from Article VII, Section 6(a) of the Illinois Constitution which states:

Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to,

7

the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const. 1970, art. VII, § 6(a).

26. However, these powers are not without limitation. Section 6(i) of Article VII states that:

> home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.

Ill. Const. 1970, art. VII, §6(i).

27. The Chapter of the Illinois Motor Vehicle Act that includes 625 ILCS 5/11-208.7 states:

> The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations **inconsistent** herewith except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act.

625 ILCS 5/11-208.2 (2012).

28. On information and belief, the City of Chicago lobbied the Illinois Legislature to introduce ILHB 2656 in an effort to amend the Illinois Motor Vehicle Code and add Section 11-208.7 to Section 11-208.2, as necessary to allow the City of Chicago to continue to collect "Administrative Penalties" in violation of Section 11-208.7.

29. ILHB 2656 proposed that 625 ILCS 5/11-208.2 should be amended to included Section 11-208.7 in the section of the Chapter of the Motor Vehicle Code that sets forth the sections there in that home rule units do not need to follow. ILHB 2656 proposed that the bold section below be added to Section 11-208.2:

§ 11-208.2. Limitation on home rule units.

8

The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Sections 11-208, **11-208.7**, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act.

**C. §11-208.7 of The Illinois Motor Vehicle Code**

30.     625 ILCS 5/11-208.7 of the Illinois Motor Vehicle Code states in pertinent part:

**(a) Any county or municipality may, consistent with this Section, provide by ordinance procedures for the release of properly impounded vehicles and for the imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle. The administrative fee imposed by the county or municipality may be in addition to any fees charged for the towing and storage of an impounded vehicle.** The administrative fee shall be waived by the county or municipality upon verifiable proof that the vehicle was stolen at the time the vehicle was impounded.

**(c) The following shall apply to any fees imposed for administrative and processing costs pursuant to subsection (b):**
**(1) All administrative fees and towing and storage charges shall be imposed on the registered owner of the motor vehicle or the agents of that owner.**
**(2) The fees shall be in addition to (i) any other penalties that may be assessed by a court of law for the underlying violations; and (ii) any towing or storage fees, or both, charged by the towing company.**

31.     Section 5/11-208.7 also states that "an ordinance establishing procedures for the release of properly impounded vehicles under this Section may impose **fees only** for the following violations:

    a.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, and offense for which a motor vehicle may be seized and forfeited pursuant to Section 36-1 of the Criminal Code of 2012; or
    b.  Driving under the influence of alcohol, another drug or drugs, an intoxicating compound or compounds, or any combination thereof, in violation of Section 11-501 of this Code; or
    c.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, a felony or in violation of the Cannabis Control Act; or

d.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, and offense in violation of the Illinois Controlled Substances Act; or

e.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, and offense in violation of Section 24-1, 24-1.5, or 24-3.1 of the Criminal Code of 1961 or the Criminal Code of 2012; or

f.  Driving while a driver's license, permit, or privilege to operate a motor vehicle is suspended or revoked pursuant to Section 6-303 of this Code except that vehicles shall not be subject to seizure or impoundment if the suspension is for an unpaid citation (parking or moving) or due to failure to comply with emission testing; or

g.  Operation or use of a motor vehicle while soliciting, possessing, or attempting to solicit or possess cannabis or a controlled substance, as defined by the Cannabis Control Act or the Illinois Controlled Substances Act; or

h.  Operation or use of a motor vehicle with an expired driver's license, in violation of Section 6-101 of this Code, if the period of expiration is greater than one year; or

i.  Operation or use of a motor vehicle without ever having been issued a driver's license or permit, in violation of Section 6-101 of this Code, or operating a motor vehicle without ever having been used a driver's license or permit due to a person's age; or

j.  Operation or use of a motor vehicle by a person against whom a warrant has been issued by a circuit clerk in Illinois for failing to answer charges that the driver violated Section 6-101, 6-303, or 11-501 of this Code; or

k.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, and offense in violation of Article 16 or 16A of the Criminal Code of 1961 or the Criminal Code of 2012; or

l.  Operation or use of a motor vehicle in the commission of, or in the attempt to commit, and other misdemeanor or felony offense in violation of the Criminal Code of 1961 or the Criminal Code of 2012, when so provided by local ordinance; or

m.  Operation or use of a motor vehicle in violation of Section 11-503 of this Code"

     i.  While the vehicle is part of a funeral procession; or
     ii.  In a manner that interferes with a funeral procession.

625 ILCS 5/11-208.7(b).

32.     Of those instances enumerated in §11-208.7(b), above, the Chicago Municipal Code imposes "Administrative Penalties," in addition to fees, for the following violations:

   a.   MCC § 7-24-225, Unlawful Drugs in Vehicle;

   b.   MCC § 7-24-226, Driving While Intoxicated;

   c.   MCC § 8-8-060, Solicitation for Prostitution;

   d.   MCC § 8-20-015, Unlawful Firearm in Vehicle;

   e.   MCC § 9-80-220, False, Stolen or Altered Temporary Registration Permits; and

   f.   MCC § 9-112-555, Revoked, Surrendered License.

**D.  Plaintiff Lintzeris**

33.     On or about April 24, 2016, Frank Lintzeris, the adult son of Plaintiff Lintzeris, borrowed her 2015 Jeep Compass and was allegedly involved in a motor vehicle accident in the City of Chicago.

34.     Frank Lintzeris was arrested for allegedly driving while intoxicated and for possession of unlawful drugs.

35.     Plaintiff Lintzeris's vehicle was impounded by the Department of Streets and Sanitation pursuant to MCC §2-14-132 and, more specifically, MCC §7-24-225 and MCC §7-24-226.

36.     On or about April 26, 2016, Plaintiff Lintzeris paid $4,210.00 to the City of Chicago Department of Finance as required to retrieve her impounded vehicle.

37.     Of the $4,210.00 paid by Plaintiff Lintzeris, $4,000.00 were "Administrative Penalties" in violation of her rights as enumerated herein.

38.     The remaining balance paid by Plaintiff Lintzeris included a $150.00 fee for towing and $60.00 for two days of storage.

39. After paying the "Administrative Penalties" subject to her right to a "full hearing," on August 17, 2016, Plaintiff Lintzeris appeared at the DOAH facility at 400 W. Superior Street in Chicago, Illinois, with her counsel. Her counsel argued to the assigned DOAH Administrative Law Judge that MCC §2-14-132 and MCC §7-24-225 and MCC §7-24-226 violate Section 11-208.7 on their face because, these and similar City ordinances at issue require the assessment "Administrative Penalty" that has been found to be a "fine" as a matter of law by the Illinois Supreme Court in *People v. Jones*, 223 Ill.2d 659 (2006), that the $4,000 "Administrative Penalty" violates Article VII of the Illinois Constitution and that it was also an excessive fine within the meaning of the 8th Amendment of the United States Constitution.

40. The DOAH Administrative Law Judge assigned to conduct the administrative hearing, advised he could not consider the arguments stating that the arguments were for "another court" and apparently referencing DOAH's policy to follow the rules set forth on the City's "Vehicle Impoundment Fact Sheet" that states:

> The vehicle owner may only present evidence of the following defenses to the impoundment:
>
> - The vehicle was stolen at the time and the theft was reported to the appropriate police authorities within 24-hours after the theft was discovered or reasonably should have been discovered.
> - The vehicle was operating as a common carrier (taxi cab, livery, etc. ...) and the violation occurred without the knowledge of the person in control of the vehicle.
> - The vehicle had been donated, traded-in or sold to another person prior to the violation.

See http://www.cityofchicago.org/city/en/depts/ah/supp_info/vip/vip_fact_sheet.html (last visited September 21, 2016).

**E. Plaintiff Jossell**

41. On or about August 12, 2016, Plaintiff Jossell was driving his 2002 Nissan Pathfinder when he was arrested for allegedly being in possession of a controlled substance.

42. Plaintiff Jossell's vehicle was impounded pursuant to MCC §2-14-132.

43. On or about August 17, 2016, Plaintiff Jossell paid $2,250.00 to the City of Chicago Department of Finance as required to retrieve his impounded vehicle.

44. Of the $2,250.00 paid by Plaintiff Jossell, $2,000.00 was an "Administrative Penalty" in violation of Plaintiff Jossell's rights as enumerated herein.

45. The remaining balance paid by Plaintiff Jossell included a $150.00 fee for towing and a $100.00 for storage.

46. After paying the illegal impoundment penalty, Plaintiff Jossell was given notice of his right to request an Administrative Hearing to contest the impoundment. Contrary to and in violation of Illinois Motor Vehicle Code 625 ILCS 5/11-208.7, the notice failed to provide the date, time or location of Plaintiff Jossell's hearing.

47. On or about August 15, 2016, Plaintiff Jossell appeared at DOAH for his Administrative Hearing, his counsel imposed the same objection that was imposed by Plaintiff Litzeris and the objection was not sustained. See ¶ 35, *supra*. Instead, Plaintiff Jossell's hearing was continued so the City could have the correct officers in attendance.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the proceeding paragraphs of this Complaint.

49.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action

and seek certification of the claims and certain issues in this action on behalf of a class defined as:

> **All persons who have paid "Administrative Penalties" pursuant to Chicago Municipal Code, §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, contrary to and in violation of Illinois Motor Vehicle Code 625 ILCS 5/11-208.7, during the period extending from January 1, 2012, through and to the filing date of this Complaint.**

Plaintiffs also bring this action on behalf of a putative Subclass of similarly situated individuals, defined as follows:

> **All persons who had judgment entered against them by DOAH pursuant to Chicago Municipal Code, §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, during the period extending from January 1, 2012 though and to the filing date of this Complaint. ("Subclass 1").**

Plaintiff Lintzeris also brings this action, on behalf of a putative Subclass of similarly situated individuals, defined as follows:

> **All persons who were required to pay two or more "Administrative Penalties" pursuant to Chicago Municipal Code, §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein because said fines are excessive, during the period extending from January 1, 2012 though and to the filing date of this Complaint. ("Subclass 2").**

50.     Plaintiffs reserve the right to amend the Class definition if further investigation and

discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

Excluded from the Class are governmental entities, Defendants, any entity in which Defendants

have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives,

employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is

any judge, justice, or judicial officer presiding over this matter and the members of their immediate

families and judicial staff.

51.     Defendants' practices and omissions were applied uniformly to all members of the

Class, including any subclass arising out of the claims alleged herein, so that the questions of law

and fact are common to all members of the Class and any subclass.

14

52.     All members of the Class and any subclass were and are similarly affected by the "Administrative Penalties" and improper notice of DOAH hearings, and the relief sought herein is for the benefit of Plaintiffs and members of the Class and any subclass.

53.     Total damages suffered by the proposed class are sizable; the City of Chicago's 2016 proposed budget indicates that Chicago has collected more than forty-three million dollars ($43 million) in revenue from MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, since the enactment of the Illinois Motor Vehicle Code Section 208.7 on January 1, 2012. Based on the annual revenue from the "Administrative Penalties," it is apparent that the number of members in both the Class and any subclass is so large as to make joinder impractical, if not impossible. Further, members of the class are easily identifiable because, on information and belief, Defendants maintain information regarding all persons who have been assessed "Administrative Penalties," have paid "Administrative Penalties," and whose cars were forfeited pursuant to MCC §2-14-132, and maintain information relating to all DOAH hearings held since January 1, 2012.

54.     Class Members can be identified using the information maintained by Defendants in the usual court of business and/or in the control of Defendants. Class Members can be notified of the pendency of the class action through direct mailing to address lists maintained in the usual course of business by Defendants. The precise number of Class members is unknown to Plaintiffs, but Plaintiffs allege that Defendants have accessed "Administrative Penalties" in excess of forty-three million dollars ($43 million).

55.     Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including *inter alia*:

a. Whether MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, are preempted by Illinois Motor Vehicle Code. 625 ILCS 5/ 11-208.7;

b. Whether Defendants impose excessive fines without proper due process as required by the 14th Amendment of the U.S. Constitution and/or Article 1, Section 2 of the Illinois Constitution in cases where multiple violations are charged and multiple "Administrative Penalties" are collected;

c. Whether the City of Chicago should be required to return all "Administrative Penalties" that it has collected, with interest, vacate judgments for "Administrative Penalties" and/or pay vehicle owners the reasonable value of their vehicles that were confiscated in lieu of or in addition to an "Administrative Penalty" or for the failure to pay an "Administrative Penalty."

56.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. The same or substantially similar sections of the Municipal Code and imposition of illegal "Administrative Penalties," pursuant to those sections, makes the pertinent portions of the Municipal Code that violate 625 ILCS 5/11-208.7 facially invalid and, therefore, the Court should declare the same and require the City of Chicago to pay remuneration to the Class.

57.     By way of example, the number of penalties assessed, and the corresponding amounts paid by Plaintiffs, is not an individual question that predominates because the question of whether Defendants systemically violation Illinois law and the due process rights of Class Members can be answered regardless of the amount in penalties paid by each Class Member. Because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law and fact affecting only individual members, class litigation is superior to any other method available for a fair and efficient decree of the claims.

58.     The claims asserted by Plaintiffs in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and any subclass is common to the members of each. The injuries sustained by the Class Members flow in each instance from a

common nucleus of operative facts. In each case, Defendants illegally violated Illinois law and the due process rights of Class Members by enforcing an ordinance in violation of the Illinois Motor Vehicle Code. Further, all Plaintiffs have been found to be in violation of MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, and have either paid "Administrative Penalties" or have had to forfeit their vehicles due to an inability to pay. Similarly, all Plaintiffs' due process rights have been violated by Defendants failure to provide the date, time and location of an assigned administrative hearing to contest said penalties. Defendants continue to retain Plaintiffs' funds, while at the same time continuing to deprive Plaintiffs of their money and any interest or other gains they may be entitled to.

59.     Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class or any subclass would be able to protect their own interests because of the cost of litigation through individual lawsuits might exceed expected recovery.

60.     Certification is also appropriate because Defendants acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of fines imposed under MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, since enactment of Illinois Motor Vehicle Code Section 208.7 on January 1, 2012, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

61.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the

prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

62.     The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

63.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

64.     Plaintiffs will fairly and adequately represent and protect the interest of the members of the Plaintiff Class and any subclass.

65.     Plaintiffs are represented by counsel experienced and competent in all areas of law relating to this Complaint, who are prepared to fully and adequately prosecute this Action on behalf of their clients and on behalf of all members of the Plaintiff Class as Class Counsel.

## COUNT I
## VIOLATION OF ILLINOIS HOME RULE ORDINANCE

66.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 65 as if fully set forth herein.

67.     Chicago is a home rule unit. The powers of home rule units to govern local affairs originates from Article VII, Section 6(a) of the Illinois Constitution which states:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const. 1970, art. VII, § 6(a).

18

68. However, these powers are not without limitation. Section 6(i) of Article VII states that:

> home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.

Ill. Const. 1970, art. VII, §6(i).

69. AS a home-rule unit, Chicago does possess inherent powers to legislate on a particular subject, however, it must not pass ordinances or continue to enforce ordinances where the legislature limits its home rule powers.

70. Section 625 ILCS 5/11-208.2 of the Illinois Motor Vehicle Code expressly limits Chicago's authority to adopt local police regulations inconsistent with the Code, except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2.

71. Chicago does not have authority to adopt any ordinances inconsistent with 625 ILCS 5/11-208.7 of the Illinois Motor Vehicle Code.

72. A municipal ordinance adopted, or that is not withdrawn, where the legislature limits home rule power is void *ab initio*.

73. MCC §2-14-132 Impoundment states in pertinent part:

…**the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle.**

74. 625 ILCS 5/11-208.7(a) provides that:

**(a) Any county or municipality may, consistent with this Section, provide by ordinance procedures for the release of properly impounded vehicles and for the imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle.**

**The administrative fee imposed by the county or municipality may be in addition to any fees charged for the towing and storage of an impounded vehicle.** The administrative fee shall be waived by the county or municipality upon verifiable proof that the vehicle was stolen at the time the vehicle was impounded.

75.     625 ILCS 5/11-208.7(c) provides that:

**(c) The following shall apply to any fees imposed for administrative and processing costs pursuant to subsection (b):**
**(1) All administrative fees and towing and storage charges shall be imposed on the registered owner of the motor vehicle or the agents of that owner.**
**(2) The fees shall be in addition to (i) any other penalties that may be assessed by a court of law for the underlying violations; and (ii) any towing or storage fees, or both, charged by the towing company.**

76.     MCC §2-14-132 is inconsistent with Illinois Motor Vehicle Code §§11-208.7(a) and (c) in its imposition of fines (*i.e.*, illegal "Administrative Penalties").

77.     Despite the express limitation on Chicago's ability to continue to enforce its impoundment ordinances in a manner that is inconsistent with 625 ILCS 5/11-208.7 *et seq.*, Chicago has done just that through the imposition of illegal "Administrative Penalties."

78.     MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein, have not been amended and are being unlawfully enforced.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.  Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b.  Prejudgment interest, and costs of suit herein incurred;

c.  Such other and further relief as this Court may deem just and proper.

**COUNT II**

## VIOLATION OF PREEMPTION CLAUSE

### A. Administrative Penalties

79.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 78 as if fully set forth herein.

80.     Chicago is a home rule unit. The powers of home rule units to govern local affairs originates from Article VII, Section 6(a) of the Illinois Constitution which states:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const. 1970, art. VII, § 6(a).

81.     However, these powers are not without limitation. Section 6(i) of Article VII states that:

> home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.

Ill. Const. 1970, art. VII, §6(i).

82.     Chicago may not adopt a municipal ordinance that is preempted by Illinois law.

83.     625 ILCS 5/11-208.7(a) provides that:

> **(a) Any county or municipality may, consistent with this Section, provide by ordinance procedures for the release of properly impounded vehicles and for the imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle. The administrative fee imposed by the county or municipality may be in addition to any fees charged for the towing and storage of an impounded vehicle.** The administrative fee shall be waived by the county or municipality upon verifiable proof that the vehicle was stolen at the time the vehicle was impounded.

84.     625 ILCS 5/11-208.7(c) provides that:

**(c) The following shall apply to any fees imposed for administrative and processing costs pursuant to subsection (b):**

**(1) All administrative fees and towing and storage charges shall be imposed on the registered owner of the motor vehicle or the agents of that owner.**

**(2) The fees shall be in addition to (i) any other penalties that may be assessed by a court of law for the underlying violations; and (ii) any towing or storage fees, or both, charged by the towing company.**

85.     Pursuant to 625 ILCS 5/11-208.2, home rule units may not adopt local regulations inconsistent with §11-208.7, above.

The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations **inconsistent** herewith except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act.

86.     Chicago Municipal Code 2-14-132 Impoundment states in pertinent part:

…**the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle.**

87.     On its face and as applied, the Ordinance directly conflicts with 625 ILCS 5/11-208.7 and is thus preempted by Illinois law.

88.     On its face and as applied, the Ordinance attempts to legislate or regulate in a field extensively occupied by the Illinois government through the Illinois Motor Vehicle Code, and thus exceeds the authority granted to Chicago by Art. VII of the Illinois Constitution.

89.     By permitting DOAH to collect "Administrative Penalties," the Ordinance conflicts with and is preempted by Illinois law.

90.     Illinois law, including but not limited to, 625 ILCS 5/11-208.7 *et seq*., only allows for "imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle."

91.     By permitting the DOAH Administrative Law Judges to order the continued impoundment of vehicles unless the owners pay the City the "Administrative Penalty" (that is clearly a fine as a matter of law) prescribed for in the code, the impoundment Ordinances at issue conflict with and are, therefore, unconstitutional and preempted by Illinois Law.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

d.  Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

e.  Prejudgment interest, and costs of suit herein incurred;

f.  Such other and further relief as this Court may deem just and proper.

## COUNT III
## VIOLATION OF 14th AMENDMENT OF U.S. CONSTITUTION

92.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 91 as if fully set forth herein.

93.     The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits Defendants from depriving any person of life, liberty, or process without due process of law. Further, 42 U.S.C. §1983 allows an action in law against every person who causes a citizen to be deprived of any right secured by the Constitution.

94.     Plaintiffs have a liberty and/or property interest in their funds and personal vehicles.

95.     The Ordinance permits the Chicago Police Department to unlawfully seize vehicles without due process of law because it requires payment of "Administrative Penalties" to have unlawfully seized vehicles released.

96.     To satisfy due process, a fine must be reasonably related to its purpose. The fine imposed by the Ordinance is $1,000 to $3,000 for each violation. Plaintiffs have the potential to incur fines of $10,000 or more.

97.     The fine is paid by the record owner of the vehicle, not the offender. Additionally, for each violation the fine is compounded. In the case of an innocent owner, such as Plaintiff Lintzeris, despite being designed to deter one act – the loaning of a vehicle, Plaintiffs must incur multiple fines for the multiple acts of the offender. Plaintiffs may be subject to fines as much as $10,000 for the single act of loaning one's vehicle to another.

98.     The fines imposed by the Ordinance are not reasonably related to its purpose. The Ordinance, on its face and as applied, imposes unlawful "Administrative Penalties."

99.     The Ordinance has no relation to any legitimate government purpose. Chicago does not have any compelling state interest or rational basis for its enactment and continued enforcement, including unlawful seizures of vehicles.

100.    As a result, the Ordinance, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment.

101.    Further, because MCC §2-14-132 is preempted by Illinois law, it is void and without effect. Therefore, all seizures of Plaintiffs' vehicles pursuant to MCC §2-14-132, since January 1, 2012 were and continue to be illegal and in violation of Plaintiffs' due process rights.

102.    In violation of Illinois law, Defendants require the payment of bonds in the amount of "Administration Penalties" prior to the release of Plaintiffs' vehicles, divesting them of the use of their vehicles. Such action by Defendants deprives Plaintiffs of their due process rights secured by the Constitution.

103.    During the pendency of DOAH hearings, Plaintiffs' vehicles were often destroyed or otherwise disposed of prior to the conclusion of the Administrative Hearing process and final disposition. In these instances, despite having a right to reclaim their vehicle, Plaintiffs' were deprived of their property interest in same without due process of law.

104.    Although many impoundment facilities are independently owned and/or operated, Chicago's custom and practice of failing to adequately record and/or communicate pending DOAH hearings to these facilities lead to continued destruction of vehicles prior to final disposition of DOAH hearings and violation of Plaintiffs due process rights.

105.    Chicago's continued failure to record and/or communicate pending hearings to these facilities is so permanent and well settled, it has become custom with the force of law.

106.    Without such records and/or communication, the impoundment facilities in Chicago's employ destroy or otherwise dispose of Plaintiffs' vehicles in accordance with MCC §2-14-132.

107.    Additionally, Chicago city officials, including but not limited to licensed city attorneys prosecuting DOAH hearings on behalf of the city are aware of Chicago's ongoing failure to record and/or communicate pending hearings to impoundment facilities in Chicago's employ so that destruction or other disposition of Plaintiffs' vehicles can be stayed pending final disposition of those actions.

108.    These officials, despite being aware of the custom which leads to violation of Plaintiffs' due process rights, know the consequences of the continued failures by Chicago, yet are deliberately indifferent.

109.    The consequences of Chicago's custom of refusing to record and/or communicate pending DOAH hearings to their impoundment facilities are plainly as MCC §2-14-132 requires

automatic destruction of unclaimed vehicles within ten (10) days after the expiration of the time during which the owner may seek judicial review of the city's actions, or fifty-five (55) days after being impounded if Chicago fails to record and/or communicate Plaintiffs' challenge to the city's impoundment to its impoundment facilities.

110.     Despite being aware to the substantial risk to Plaintiffs' property interest in their vehicles, Chicago officials continually fail to take appropriate steps to protect Plaintiffs.

111.     Pursuant to 42 U.S.C. §1983, Defendants deprived Plaintiffs of due process of law and are therefore liable for the incidents of destruction as a result.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.   Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b.   Reasonable attorneys' fees pursuant to 42 U.S.C. §1988, prejudgment interest, and costs of suit herein incurred;

c.   Such other and further relief as this Court may deem just and proper.

**COUNT IV**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER ILLINOIS CONSTITUTION**

112.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 111 as if fully set forth herein.

113.     The Due Process Clause of Article I, Section 2 of the Illinois Constitution prohibits Chicago from depriving any person of life, liberty, or process without due process of law.

114.     Plaintiffs have a liberty and/or property interest in their monies.

115.    The Ordinance deprives Plaintiffs of such interests without due process of law because it requires Plaintiffs to request a hearing before DOAH, in violation of Illinois law.

116.    By requiring Plaintiffs to request an administrative hearing, the Ordinance does not require Chicago to sustain any burden to prove by sufficiently probative evidence that a violation of the code occurred.

117.    Additionally, the Ordinance permits Chicago to deprive Plaintiffs of the liberty and/or property interest in their monies through the imposition of "Administrative Penalties."

118.    To satisfy due process, a fine must be reasonably related to its purpose. The fine imposed by the Ordinance is $1,000.00 to $2,000.00 for each violation. Plaintiffs have the potential to incur fines in excess of $4,000.00.

119.    The fine is paid by the record owner of the vehicle, not the offender. Additionally, for each violation the fine is compounded. In the case of an innocent owner, such as Plaintiff Lintzeris, despite being designed to deter one act – the loaning of a vehicle, Plaintiffs must incur multiple fines for the multiple acts of the offender. Plaintiffs may be subject to fines upwards of $4,000.00 for the single act of loaning one's vehicle.

120.    The Ordinance has no relation to any legitimate government purpose. Chicago does not have any compelling state interest or rational basis for its enactment.

121.    As a result, the Ordinance, on its face and as applied, violates the Due Process Clause of the Illinois Constitution.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a. Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b. Prejudgment interest, and costs of suit herein incurred;

c. Such other and further relief as this Court may deem just and proper.

**COUNT V**
**VIOLATION OF 8th AMENDMENT OF U.S. CONSTITUTION**

122.    Plaintiff Lintzeris hereby incorporates by reference all of their allegations set forth above in paragraphs 1 through 121 as if fully set forth herein.

123.    The Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution prohibits the government from imposing a monetary penalty that is grossly disproportionate to the offense it is designed to punish.

124.    The fines imposed by the Ordinance range from $1,000.00 to $3,000.00 for each violation. Plaintiff Lintzeris was charged with multiple fines for multiple violations requiring assessment of "Administrative Penalties" in the amount of $4,000.00.

125.    The fine is paid by the record owner of the vehicle, not the offender. Additionally, for each violation the fine is compounded. In the case of an innocent owner, such as Plaintiff Lintzeris, despite being designed to deter one act – the loaning of a vehicle, Plaintiffs must incur multiple fines for the multiple acts of the offender. Plaintiffs may be subject to fines upwards of $4,000.00 for the single act of loaning one's vehicle.

126.    The fines imposed by Chicago are excessive because they are grossly disproportionate to the offense they are designed to punish.

127.    Instead, Chicago imposes these fines as a method to generate revenue.

128.     As a direct and proximate result of the City's actions, the named Plaintiffs have suffered, and will continue to suffer, irreparable injury to their constitutional rights.

129.     As a direct and proximate result of the "Administrative Penalties," the named Plaintiffs will suffer irreparable injury to their constitutional rights.

130.     Declaratory and injunctive relief is necessary to remedy the City's unconstitutional conduct of fining Plaintiffs for harmless activities. Without appropriate declaratory and injunctive relief, the City's unconstitutional practices will continue.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.   Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b.   Prejudgment interest, and costs of suit herein incurred;

c.   An injunction forbidding Defendants from further collection of the "Administrative Penalties" under MCC §2-14-132;

d.   Such other and further relief as this court may deem just and proper.

## COUNT VI
## DECLARATORY JUDGMENT

131.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 130 as if fully set forth herein.

132.     Since January 1, 2012, Defendants have collected "Administrative Penalties" from Plaintiffs contrary to and in violation of 625 ILCS 5/11-208.2 and 11-208.7.

133.     These "Administrative Penalties" were contrary to and in violation of 625 ILCS 5/11-208.2 and 11-208.7. There is an actual controversy between the parties regarding the legality of these penalties.

134.     Plaintiffs have a protectable interest and clearly ascertainable right to not have their monies unlawfully taken from them.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.  A declaration that the "Administrative Penalties" since January 1, 2012 are contrary to and in violation of 625 ILCS 5/11-208.2 and 11-208.7;

b.  A declaration that MCC §2-14-132 is void as a matter of law;

c.  Such other and further relief as this court may deem just and proper.

## COUNT VII
## INJUNCTIVE RELIEF

135.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 134 as if fully set forth herein.

136.     Since January 1, 2012, Defendants have collected "Administrative Penalties" from Plaintiffs contrary to and in violation of 625 ILCS 5/11-208.7.

137.     Plaintiffs have a substantial likelihood of success on the merits, as MCC §2-14-132 and the pertinent sections of the Chicago Municipal Code identified therein by unlawfully seizing and detaining vehicles, are clearly in violation of 625 ILCS 5/11-208.2 and 11-208.7 on their face because they allow for the imposition of "Administrative Penalties," and are therefore preempted by Illinois law.

138.     Additionally, Defendants continue to knowingly and illegally enforce MCC §2-14-132, and the pertinent sections of the Chicago Municipal Code identified therein, in violation of

Illinois law, causing substantial irreparable harm to Plaintiffs, and other similarly situated people for which there is no adequate remedy at law other than permanent injunctive relief to prohibit further violation of Plaintiffs' rights.

139.    In balancing the interests of the parties against the public interest, the scales weights in favor of injunctive relief to prevent continued violation of Plaintiffs' Constitutional rights, and stop the City from its deliberate violation of Illinois law.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.  An injunction prohibiting Defendants from continuing to knowingly violate Illinois law by unlawfully seizing and impounding vehicles, initiating or conducting further impoundment proceedings at DOAH or in any other forum that seek "Administrative Penalties" in violation of 625 ILCS 5/11-208.7;

b.  An injunction prohibiting Defendant Eddie Johnson, as Superintendent of the Chicago Police Department, from continuing to knowingly violate Illinois law by impounding Plaintiffs' vehicles pursuant to MCC §2-14-132, and the pertinent sections of the Chicago Municipal Code identified therein;

c.  An injunction requiring Charles L. Williams, as Commissioner of the Chicago Department of Streets and Sanitation, to release all vehicles currently impounded and held pursuant to MCC §2-14-132, for failure to post bond or pay an "Administrative Penalty" and to send immediate notice to the owners of the vehicles;

d.  Such other and further relief as this court may deem just and proper.

## COUNT VIII
## UNJUST ENRICHMENT AND RESTITUTION

140.    Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 139 as if fully set forth herein.

141.    Since January 1, 2012, Chicago has collected approximate forty-three million dollars ($43,000,000) in impoundment penalties from Plaintiffs.

142.    But for Defendants' unlawful seizure and impoundment of vehicles, requiring "Administrative Penalties" to be posted as bond for the release of vehicles and entering judgments, collecting funds, destroying or selling vehicles because of the failure to pay "Administrative Penalties," contrary to and in violation of 625 ILCS 5/11-208.7, Chicago would not have received at least forty-three million dollars ($43,000,000) from Class Members and additional proceeds obtained by selling unlawfully seized vehicles.

143.    Defendant Chicago has never been legally entitled to collect the "Administrative Penalties" from Plaintiffs, or any members of the Plaintiff Class.

144.    Defendant Chicago has improperly obtained and kept money belonging to Plaintiffs and to all members of the Plaintiff Class.

145.    Defendants have been unjustly enriched at the expense of, and detriment to, Plaintiffs. Allowing the Defendants to retain the impoundment penalties would violate fundamental principles of justice, equity and good conscience.

146.    This Court has the power to award restitution to Plaintiffs, in both law and in equity, to rectify the unjust gains and enrichment of Defendants.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a. Defendants shall refund to Plaintiffs all sums they have paid in "Administrative Penalties" assessed in connection with MCC §2-14-132;

b. Legal and equitable restitution to Plaintiffs of all such sums;

c. Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

d. Reasonable attorneys' fees, prejudgment interest, and costs of suit herein incurred;

e. Such other and further relief as this Court may deem just and proper.

## COUNT IX
## IMPOSITION OF CONSTRUCTIVE TRUST

147. Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 146 as if fully set forth herein.

148. Since January 1, 2012, the "Administrative Penalties" were in the possession and under the control of Defendant. Defendants continue to take possession of new impoundment penalties every day.

149. Defendants have wrongfully acquired and continue to wrongfully acquire the "Administrative Penalties" for their own use and benefit and have deprived Plaintiffs of the use and benefit thereof.

150. It would be unjust for Defendant to retain Plaintiffs' monies.

151. Plaintiffs have been damages by Defendants' failure to return Plaintiffs' monies.

WHEREFORE, Plaintiffs pray for the imposition of a constructive trust on all "Administrative Penalties" received and retained by Defendants, in the past, present and future, and for an equitable accounting of all "Administrative Penalties" received or used as a result of said Ordinance, and for an order for Defendants to return the property to Plaintiffs.

## COUNT X
## <u>CONVERSION</u>

152.     Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 151 as if fully set forth herein.

153.     But for the illegal collection of impoundment penalties, Plaintiffs would have paid Defendants fines at least in the sum of forty-three million dollars ($43,000,000) since January 1, 2012.

154.     Defendants wrongfully assumed control, dominion, or ownership over Plaintiffs personal property.

155.     The proceeds of Defendant's "Administrative Penalties" have already been spent as part of the Special Revenue Fund of the City of Chicago's Budget. Accordingly, a demand on Defendant for return of the impoundment penalties would be futile.

156.     Plaintiffs are entitled to immediate possession of the impoundment penalties, absolutely and unconditionally.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendant, including the following:

a.   Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b.   Prejudgment interest, and costs of suit herein incurred;

c.   Such other and further relief as this Court may deem just and proper.

## COUNT XI
## <u>CONSPIRACY TO CONVERT</u>

157.   Plaintiffs hereby incorporate by reference all of their allegations set forth above in paragraphs 1 through 156 as if fully set forth herein.

158.   But for MCC §2-14-132, and the pertinent sections of the Chicago Municipal Code identified therein, Plaintiffs would have retained possession of the monies collected as "Administrative Penalties."

159.   Defendants conspired and agreed to arrange for wrongfully assuming control, dominion, or ownership over Plaintiffs' personal property.

160.   In furtherance of this agreement, Defendants wrongfully assumed control, dominion, or ownership over Plaintiffs' monies.

161.   The proceeds of Defendant's "Administrative Penalties" have already been spent as part Special Revenue Fund of the City of Chicago's Budget. Accordingly, a demand on Defendants for return of the impoundment penalties would be futile.

162.   Plaintiffs are entitled to immediate possession of their monies, absolutely and unconditionally.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, including the following:

a.   Compensatory, incidental, and consequential damages in an amount to be determined at trial, equal to the "Administrative Penalties" unlawfully collected and/or obtained by selling vehicles because of the failure to pay "Administrative Penalties;"

b.   Prejudgment interest, and costs of suit herein incurred;

c.   Such other and further relief as this Court may deem just and proper.

Dated: September 22, 2016                    Respectfully submitted,


By: _____/s/ Charles F. Morrissey_____
          Daniel C. McCabe (IL ARDC # 6225581)
          Charles F. Morrissey (IL ARDC # 6243531)
          Cassie R. S. Stockert (IL ARDC # 6314081)
          McCabe, Miller & Morrissey, LLC
          55 E. Monroe, Suite 2905
          Chicago, Illinois 60603
          (312) 245-9190